IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ANGELA T.,                        )
                                  )
            Plaintiff,            )
                                  )
      v.                          )    1:22CV842
                                  )
KILOLO KIJAKAZI,                  )
Acting Commissioner of Social     )
Security,                         )
                                  )
            Defendant.            )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Angela T., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 6 (Plaintiff's Brief); Docket Entry 10 (Defendant's Memorandum); Docket Entry 11 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for the Commissioner.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 343-49), alleging a disability onset date of August 1, 2013 (see Tr. 343). Upon denial of that application initially (Tr. 112-32, 185-88) and on reconsideration (Tr. 133-55, 195-202), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 203-04). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 54-90.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 156-79.) The Appeals Council thereafter granted Plaintiff's request for review (Tr. 180-84, 254-55, 446-48), because the ALJ's "decision d[id] not define the term 'semi-rapid pace'" in the RFC (Tr. 182 (quoting Tr. 165)), and ordered the ALJ to "offer [Plaintiff] an opportunity for a [new] hearing, take any further action needed to complete the administrative record, and issue a new decision" (Tr. 183).

The ALJ convened a new hearing, which Plaintiff, her attorney, and a new VE attended. (Tr. 91-111.) Following that hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act. (Tr. 7-33.) The Appeals Council later denied Plaintiff's request for review (Tr. 1-6, 340-42, 493-95), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

2

1.   [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2018.

2.   [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2013 through her date last insured of December 31, 2018.

. . .

3.   Through the date last insured, [Plaintiff] had the following severe impairments: Major Depressive Disorder (MDD), Generalized Anxiety Disorder (GAD), psychogenic conversion disorder, hypertension (HTN), degenerative joint disease (DJD) bilateral hips, degenerative disc disease (DDD)/DJD of the spine, and right arm tendinitis.

. . .

4.   Through the date last insured, [Plaintiff] d[id] not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; never climbing ladders, ropes, or scaffolds, or balancing, with balance as defined by the [<u>Selected Characteristics of Occupations</u> ("<u>SCO</u>")]. [She] can frequently but not constantly handle and finger; should avoid exposure to concentrated atmospheric conditions (as defined by the [<u>SCO</u>]) and extreme cold and heat; and must avoid all exposure to unprotected heights and dangerous machinery and cannot operate vehicles.  She can understand, remember, and follow simple instructions; maintain concentration, persistence, and pace for and adapt to and manage simple routine tasks; perform work that is not on an assembly line or at production pace; perform work that does not require more than superficial or incidental contact with the general public; work in proximity to but not coordination with co-workers; and can respond appropriately to supervisors if there is no more than occasional interaction.

> . . .
>
> 6. Through the date last insured, [Plaintiff wa]s unable to perform any past relevant work.
>
> . . .
>
> 10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.
>
> . . .
>
> 11. [Plaintiff] has not been under a disability, as defined in the . . . Act, at any time from August 1, 2013, the alleged onset date, through December 31, 2018, the date last insured.

(Tr. 12-25 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a

4

reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether

5

[the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993

8

## B. Assignment of Error

In Plaintiff's first and only issue on review, she maintains that "[t]he ALJ [] failed to include significant limitations resulting from [Plaintiff]'s impairments [in the RFC] and failed to provide an adequate discussion rejecting those limitations." (Docket Entry 6 at 5 (block quote formatting omitted); <u>see also</u> Docket Entry 10 at 1-6.)  More specifically, Plaintiff argues that, despite the ALJ's finding the opinions of the state agency psychological consultants "'moderately' persuasive" (Docket Entry 6 at 7 (purporting to quote Tr. 21-22)), "[t]he ALJ's RFC failed to include the[ consultants'] limitations" that Plaintiff "could only 'carry out <u>short</u> and simple instructions'" (<u>id.</u> (emphasis added) (quoting Tr. 129, 152)).  According to Plaintiff, the RFC's restrictions to "simple instructions" and "simple routine tasks" permitted "a much greater level of ability than the [consultants'] opinions [the ALJ] relied upon[,] and the ALJ gave no indication for why, or what records, supported eliminating the preclusion of detailed instructions." (<u>Id.</u>)  Plaintiff additionally faults the ALJ for "f[inding] that [Plaintiff] could respond with [sic] supervisors appropriately only if she interacted with supervisors on no more than an occasional basis" (<u>id.</u> at 8 (citing Tr. 16)), but "fail[ing] to adequately explain how the frequency of

---

F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

9

interaction with supervisors [wa]s related to [Plaintiff]'s ability to respond to supervisors appropriately" (id.; see also id. ("[Plaintiff] must be able to respond appropriately to supervisors any time she interacts with [them] no matter the frequency." (citing Social Security Ruling 85-15, <u>Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments</u>, 1985 WL 56857 (1985) ("SSR 85-15"), and Program Operations Manual System ("POMS") DI 25020.010(B)(2)))). Those contentions miss the mark.

In this case, both state agency psychological consultants opined that, despite Plaintiff's severe mental impairments, she remained "able to make simple work related decisions and carry out <u>short</u> and simple instructions." (Tr. 129, 152 (emphasis added).) In turn, the ALJ evaluated the opinions of state agency psychological consultants as follows:

> Moderate weight is given to the opinion of [the s]tate agency psychological consultant [at the reconsideration level of review,] Jacquelyn A. Harrison, Ph.D. Dr. Harrison opined in June 2017 that [Plaintiff]'s personality disorders, anxiety and obsessive-compulsive disorders, and depressive, bipolar, and related disorders impairments are severe. She further stated that [Plaintiff] is capable of performing routine tasks in a stable, low pressure setting with a low level of interpersonal demands. In addition, Dr. Harrison mentioned that [Plaintiff] has social interaction limitations. Finally, Dr. Harrison opined that [Plaintiff] has moderate limitations in the areas of interacting with others, adapting or managing oneself, concentrating, persisting, or maintaining pace, and understanding, remembering, or applying information. Moderate weight is given to the opinion of Dr. Harrison

10

> because it is well supported, consistent with the limitations noted in the record, consistent with [Plaintiff]'s testimony that she sometimes has a hard time dealing with others, and consistent with the medical records, which showed symptoms of anxiety, depression, and crying spells, but orientation times three, a normal mood, a normal affect, normal speech, normal attention, normal concentration, cooperativeness, normal behavior, normal judgment, normal cognition, good judgment, normal recent and remote memory, goal directed and linear thoughts, and no hallucinations, suicidal ideations, or delusions. However, though it is not inconsistent with the record it is vague [as] it does not define low pressure and low level of interpersonal demands.
>
> Moreover, moderate weight is given to the opinion of [the s]tate agency psychological consultant [at the initial level of review,] Brian Grover, Psy.D., dated February 2017. Partial weight is given to the portion of the opinion indicating that [Plaintiff] has moderate limitations regarding interacting with others, adapting or managing oneself, and concentrating, persisting, or maintaining pace. He also stated that [Plaintiff] is capable of performing routine tasks in a stable, low pressure setting with a low level of interpersonal demands. These portions of the opinion are well supported, consistent with the limitations noted in the record, and consistent with the medical evidence of record as a whole. However, the portion of the opinion noting that [Plaintiff] is capable of performing routine tasks in a stable, low pressure setting with a low level of interpersonal demands is vague similar to Dr. Harrison. Thus, only moderate weight is given to the opinion of [Dr. Grover].

(Tr. 21-22 (internal parenthetical citations omitted).) Plaintiff has failed to demonstrate prejudicial error with respect to that analysis by the ALJ.

To begin, the ALJ did err by failing to explain why she assigned "[m]oderate weight" to the state agency psychological consultants' opinions (Tr. 21, 22), but did not include their

11

limitation to "short and simple instructions" (Tr. 129, 152 (emphasis added)) in the RFC but, rather, only limitations to "simple instructions" and "simple routine tasks" (see Tr. 16). See Raymer v. Colvin, No. 14CV6009, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (unpublished) ("[A]n ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions."); see also Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p) (providing that, if conflict exists between medical opinion and RFC, "the [ALJ] must explain why the opinion was not adopted").

Moreover, the ALJ's omission of the modifier "short" when limiting Plaintiff to simple instructions (see Tr. 16) impacted the availability of jobs cited by the VE and adopted by the ALJ at step five of the SEP. The United States Court of Appeals for the Fourth Circuit has held that an apparent conflict exists between an RFC's "limitation to short, simple instructions" and jobs the DOT rates as requiring a Reasoning Development Level of 2 ("RDL 2"), which entails the ability to carry out "detailed but uninvolved . . . instructions," Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019) (internal quotation marks omitted) (emphasis added); see also Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (holding "that a limitation to 'short' instructions was

12

inconsistent with the concept of 'detailed but uninvolved instructions' in [RDL] 2 because detail and length are highly correlated"). Here, the DOT rates two of the four jobs provided by the VE in response to the ALJ's dispositive hypothetical question (see Tr. 106-07), and later adopted by the ALJ at step five of the SEP (see Tr. 24) as requiring RDL 2, see DOT, No. 361.687-014 ("Classifier"), 1991 WL 672991 (G.P.O. 4th ed. rev. 1991);[5] DOT, No. 222.687-014 ("Garment Sorter"), 1991 WL 672131.

The ALJ's error in that regard, however, qualifies as harmless, as the DOT rates the two remaining jobs cited by the VE (see Tr. 105-06) and adopted by the ALJ at step five of the SEP (see Tr. 24) at RDL 1, see DOT, No. 323.687-014 ("Cleaner, Housekeeping"), 1991 WL 672783; DOT, No. 920.687-026 ("Bander, Hand"), 1991 WL 687967,[6] which requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development"), 1991 WL 688702 (emphasis added). Under such circumstances, the ALJ's failure to either accept and adopt the state agency psychological consultants' limitation to "short and simple instructions" (Tr.

---

[5] The DOT job "Classifier" corresponds to the job the VE and ALJ called "laundry sorter." (Tr. 24 (initial caps omitted), 106.)

[6] The VE and ALJ referred to the "napkin band wrapper" job (Tr. 24 (initial caps omitted), 106), which the DOT calls "Bander, Hand."

13

129, 152 (emphasis added)), or reject the limitation and explain the rejection (see Tr. 21-22) amounts to harmless error, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").[7]

Lastly, Plaintiff faults the ALJ for "f[inding] that [Plaintiff] could respond with [sic] supervisors appropriately only if she interacted with supervisors on no more than an occasional basis" (Docket Entry 6 at 8 (citing Tr. 16)), but "fail[ing] to adequately explain how the frequency of interaction with

---

[7] Plaintiff "conceded that the VE offered some [RDL 1] jobs, but [argues that Plaintiff could ]not guess that[,] had the VE been given greater limitations, he would still have given jobs existing in significant numbers in the national economy, when combined with [Plaintiff]'s other limitations." (Docket Entry 6 at 7.) The issue before the Court, however, does not turn on whether, as a general matter, "greater limitations" would have resulted in the VE testifying that no jobs existed in significant numbers in the national economy that Plaintiff could have performed. Rather, the issue remains whether the ALJ's inclusion of the state agency psychological consultants' limitation to "short and simple instructions" (Tr. 129, 152 (emphasis added)) in the RFC and dispositive hypothetical question would have led to that no-jobs testimony. The record before the Court demonstrates that a restriction to short and simple instructions would not have caused the VE to eliminate the housekeeping cleaner and napkin band wrapper jobs, as the DOT rates both jobs at RDL 1, see DOT, No. 323.687-014 ("Cleaner, Housekeeping"), 1991 WL 672783; DOT, No. 920.687-026 ("Bander, Hand"), 1991 WL 687967, i.e., as involving "simple one- to two-step instructions," DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development"), 1991 WL 688702 (emphasis added). Moreover, the VE testified that 220,000 housekeeping cleaner jobs and 12,000 napkin band wrapper jobs existed in the national economy (see Tr. 105-06), numbers that clearly qualify as significant under Fourth Circuit precedent, see Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the [VE] . . . do not exist in significant numbers within the region. We do not think that the approximately 110 jobs testified to by the [VE] constitute an insignificant number.").

14

supervisors [wa]s related to [Plaintiff]'s ability to respond to supervisors appropriately" (id.; see also id. ("[Plaintiff] must be able to respond appropriately to supervisors any time she interacts with [them] no matter the frequency." (citing SSR 85-15, and POMS DI 25020.010(B)(2)))). In Plaintiff's view, "[t]his issue is crucial because the ALJ determined [Plaintiff] was limited to unskilled work, and the ability to interact appropriately with supervisors is critical to the performance of unskilled work." (Id.)

Here, the ALJ found in the RFC that Plaintiff retained the ability to "respond appropriately to supervisors if there is no more than occasional interaction." (Tr. 16.) In other words, the ALJ found that Plaintiff can respond appropriately to supervision in work settings where interaction with supervisors occurs only occasionally. That finding coheres with the state agency psychological consultants' opinion that Plaintiff had moderate (not marked) limitation in her "ability to accept instructions and respond appropriately to criticism from supervisors" (Tr. 129, 152) and therefore needed a job "with a low level of interpersonal demands" (Tr. 130, 153), as well as with the ALJ's finding that Plaintiff had moderate (not marked) limitation in social interaction at step three of the SEP (see Tr. 15). The VE, in turn, cited four jobs whose DOT code contains a fifth digit of "8" (Tr. 105-07 (citing DOT Nos. 323.6**8**7-014, 920.6**8**7-026, 361.6**8**7-014,

15

222.6<u>8</u>7-014)), representing the lowest level of human interaction in the workplace, <u>see</u> <u>Fletcher v. Colvin</u>, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, Jr., C.J.).  Accordingly, Plaintiff has not shown that the ALJ "failed to adequately explain how the frequency of interaction with supervisors [wa]s related to [Plaintiff]'s ability to respond to supervisors appropriately."  (Docket Entry 6 at 8.)

In sum, Plaintiff's first and only issue on review fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this matter be dismissed with prejudice.

<u>         /s/ L. Patrick Auld        </u>
**L. Patrick Auld
United States Magistrate Judge**

October 12, 2023